IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case Nos. 16 C 6450 |
| | 16 C 6455 |
| v. | 16 C 7631 |
| ROBERT PULLIA, JOSEPH SCALISE, and ARTHUR RACHEL, | Judge Harry D. Leinenweber |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Motions under 28 U.S.C. § 2255 to Set Aside, Correct, or Vacate Defendants' Sentences. As the parties briefed these cases in consolidated fashion and Defendants were all prosecuted in the same underlying criminal case, the Court issues the following single Opinion denying Defendants Pullia's and Scalise's Motions with prejudice and denying Defendant Rachel's Motion without prejudice.

## I. BACKGROUND

On January 13, 2011, the Government indicted Defendants Robert Pullia ("Pullia"), Joseph Scalise ("Scalise"), and Arthur Rachel ("Rachel") on four counts: conspiring to participate in the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d) (Count I); conspiring to interfere with commerce through robbery, in

violation of the Hobbs Act, 18 U.S.C. § 1951 (Count II); possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c) (Count III); and possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g) (Count IV).

Just over a year later, Pullia and Scalise each pleaded guilty to all four counts. Their plea agreements detail the dealings of a criminal organization that included, among others, Pullia, Scalise, and Rachel. The organization had as its object the commission of certain federal and state crimes. Specifically, its members conspired to rob an armored truck and engaged in surveillance to identify the time and manner in which the truck visited a local bank. (Scalise and Pullia also admitted to performing surveillance on other robbery targets.) Scalise admitted that he suggested spraying resisting victims with tear gas. In addition, Pullia and Scalise admitted that they conspired with Rachel to break into a residence and use force to take property from its inhabitants. As with the armored truck, the three men surveilled the residence ahead of the contemplated break-in. Ultimately, they agreed on a break-in strategy involving drilling a hole through the mortar surrounding a glass block window located on the side of the house. On April 7, 2010, Scalise began drilling a hole through the mortar, and reported his

progress to Pullia and Rachel (who were waiting in a nearby van and monitoring police radio traffic). Both Defendants also admitted that Scalise used an alias to rent a garage for the purpose of storing stolen vehicles, firearms, magazines, ammunition, and masks for use in the course of the enterprise's illegal activity. Both previously convicted of felonies, Pullia and Scalise admitted to possessing at least one of the three firearms stored in the garage for use in the commission of the enterprise's planned robberies.

By the terms of the plea agreements, the parties could not ask for a sentence outside the agreed range of 106 to 117 months and neither Pullia nor Scalise would be bound by his plea unless the Court imposed a sentence within this range. (Case No. 10 CR 290, ECF No. 199 ("Pl. Agr.") ¶ 10 (citing FED. R. CRIM. P. 11(c)(1)(C)).) Also included in each agreement is a provision waiving the defendant's right to seek collateral review under 28 U.S.C. § 2255. The exceptions to this waiver are for claims of involuntariness, ineffective assistance of counsel with respect to the waiver itself, and motions "seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress,

the Supreme Court or the United States Sentencing Commission."
(Pl. Agr. ¶ 17(b).)

The case against Rachel, however, proceeded to a bench trial. The Government presented evidence consistent with the above factual bases for Pullia's and Scalise's pleas. On January 26, 2012, the Court convicted Rachel on the first three counts but acquitted him on Count IV, finding "overwhelming evidence" that Rachel conspired with Pullia and Scalise "to take property from the person or presence of Mrs. Lascola, the owner of that home, by force or threat of imminent force, and that several steps were taken in furtherance of the conspiracy." (Case No. 10 CR 290-3, ECF No. 221 ("Rachel Findings") at 3:14-19.) The Court placed emphasis on Rachel's arrest outside the residence clad in dark clothes and within reach of a panoply of burglary tools. Similarly, the Court found that Rachel "conceded his participation in the conspiracy by discussing the robbery and noting that he wanted 'biggest gun we got'" in connection with the armored truck robbery. (*Id.* at 6:4-7.) Finally, the Court applied the foreseeability and "in furtherance" rationales articulated in *Pinkerton v. United States,* 328 U.S. 640 (1946), to find Rachel guilty on Count III despite his contention that he had not personally possessed the firearms found in Scalise's rented garage.

On June 7, 2012, the Court sentenced Rachel to a total term of imprisonment of 101 months - 41 months on Counts I and II, and a consecutive term of 60 months on Count III. Rachel did not appeal. On August 29, 2012, the Court sentenced Scalise to a total term of imprisonment of 106 months – 46 months on Counts I, II, and IV, and a consecutive term of 60 months on Count III. Pullia received the same sentence on that day. As a condition of their respective pleas, Pullia and Scalise waived their appeal rights.

On June 21, 2016, Scalise and Pullia filed their § 2255 Motions arguing that their convictions on Count III for possessing a firearm in furtherance of a crime of violence are invalid under *Johnson v. United States,* 135 S.Ct. 2251 (2015). On July 28, 2016, Rachel filed his own analogous § 2255 Motion.

## II. <u>LEGAL STANDARD</u>

Section 2255 allows a person held in federal custody to petition the sentencing court for an order vacating, setting aside, or correcting his sentence. 28 U.S.C. § 2255(a). Relief is "reserved for extraordinary situations." *Hays v. United States,* 397 F.3d 564, 566 (7th Cir. 2005) (quoting *Prewitt v. United States,* 83 F.3d 812, 816 (7th Cir. 1996)). A petitioner must establish that "the district court sentenced him in violation of the Constitution or laws of the United States or that the

sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." *Id.* at 566-67 (quoting *Prewitt,* 83 F.3d at 816).

### III.  DISCUSSION

All three Defendants were sentenced to the mandatory minimum of 60 months' imprisonment under 18 U.S.C. § 924(c)(1)(A)(i), which applies to a defendant who uses or carries a firearm during the commission of any "crime of violence."  A "crime of violence" is an offense that both is a felony and either "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 924(c)(3)(A)-(B). Subpart (A) is the so-called "elements clause," whereas subpart (B) is known as the "residual clause." Underlying each Defendant's guilty plea (or, in Rachel's case, conviction) on Count III under § 924(c) was a guilty plea (or conviction) on Count II for conspiracy to commit Hobbs Act robbery.  (The Court notes that "[e]very circuit to have considered the issue has concluded that § 924(c) does not require the defendant to be convicted of (or even charged with) the predicate crime, so long as there is legally sufficient proof that the predicate crime was, in fact,

committed." *Johnson v. United States,* 779 F.3d 125, 129 (2d Cir. 2015) (citations omitted); *see also, Davila v. United States,* 843 F.3d 729, 731 (7th Cir. 2016) (holding that § 924(c)(1)(A) "requires a minimum sentence of five years if the firearm is possessed during and in relation to a drug offense or a crime of violence 'for which the person *may be* prosecuted' (emphasis added); it does not require a prosecution for or conviction of that other offense") (citations omitted).)

In *Johnson v. United States,* 135 S.Ct. 2551, 2557 (2015), the Supreme Court held unconstitutionally vague the residual clause in the Armed Career Criminal Act (the "ACCA"), 18 U.S.C. 924(e)(2)(B)(ii). *Welch v. United States,* 136 S.Ct. 1257 (2016), then gave that decision retroactive application on collateral review. Defendants contend in their § 2255 Motions that their sentences on Count III cannot be sustained because, under *Johnson* and its Seventh Circuit progeny, § 924(c)'s similar residual clause is unconstitutionally vague. And because Hobbs Act conspiracy does not qualify as a predicate "crime of violence" under the elements clause of § 924(c)(3), Defendants contend, there is no anchor for their guilty pleas (or, in Rachel's case, conviction) and subsequent sentences under § 924(c).

## A.  The Residual Clause of Section 924(c)
## Is Unconstitutionally Vague

Defendants are correct that § 924(c)(3)(B) is unconstitutionally vague. *United States v. Cardena,* 842 F.3d 959, 995-96 (7th Cir. 2016) ("[W]e hold that the residual clause in 18 U.S.C. § 924(c)(3)(B) is . . . unconstitutionally vague."). The Government maintains that *Johnson*'s rationale does not render § 924(c)'s residual clause unconstitutionally vague as applied to the facts of this case and that the Seventh Circuit in *Cardena* and its progenitor, *United States v. Vivas-Ceja,* 808 F.3d 719 (7th Cir. 2015), committed grave error in finding § 924(c)(3)(B) and 18 U.S.C. § 16(b), respectively, facially unconstitutionally vague. The Government seeks to drive a wedge between *Johnson*'s rationale and these two Seventh Circuit cases by arguing, for example, that § 924(e), unlike § 924(c), contained a list of enumerated offenses that contributed to the statute's confusion and enjoyed extensive review by lower courts prior to the vagueness determination. Yet the Seventh Circuit has rejected these and other similar arguments. *See, Vivas-Ceja,* 808 F.3d at 723 ("The government insists that *Johnson* . . . placed special emphasis on the confusion created by the list of enumerated crimes preceding the residual clause, *see, Johnson,* 135 S.Ct. at 2558-60, a feature not present in § 16(b). The government overreads this part of the

Court's analysis. . . . The list itself wasn't one of the 'two features' that combined to make the clause unconstitutionally vague.") (quotation omitted); *ibid.* ("Section 16(b), on the other hand, hasn't produced a shifting and irreconcilable body of caselaw, so the government thinks it's unnecessary to throw in the towel and declare the statute unconstitutionally vague. This argument, too, overstates the Court's point. . . . The chaotic state of the caselaw was not a necessary condition to the [*Johnson*] Court's vagueness determination."). This Court is duty-bound to follow *Cardena* and the *Vivas-Ceja* court's rejection of the Government's arguments. Per *Cardena*, § 924(c)(3)(B) is indeed unconstitutionally vague.

### B. Hobbs Act Conspiracy Is Not a Crime of Violence within the Meaning of Section 924(c)'s Elements Clause

Given the unconstitutionality of the residual clause, Defendants' sentences on Count III for conspiracy to commit Hobbs Act robbery must find their bedrock in the elements (or "force") clause of § 924(c)(3)(A). Defendants argue that the elements of Hobbs Act conspiracy do not satisfy the elements clause's requirement of the "use, attempted use, or threatened use of physical force," and thus that the offense can never qualify as a crime of violence under the elements clause. To determine whether a predicate offense so qualifies, courts use a categorical

approach and look only to the statutory *elements* of the offense –
not the *facts* underlying a particular commission of the offense.
*See, Descamps v. United States,* 133 S.Ct. 2276, 2283 (2013). To
prove Hobbs Act conspiracy, the Government must establish "that
two or more persons agreed to commit an unlawful act, and that the
defendant knowingly and intentionally joined in the agreement."
*United States v. Haynes,* 582 F.3d 686, 698 (7th Cir. 2009),
*abrogated on other grounds, United States v. Vizcarra,* 668 F.3d
516 (7th Cir. 2012).

The Government reminds the Court that Hobbs Act robbery
constitutes a "crime of violence" under the elements clause of
§ 924(c)(3). *See, United States v. Anglin,* 846 F.3d 954, 965 (7th
Cir. 2017) ("Hobbs Act robbery is a 'crime of violence' within the
meaning of § 923(c)(3)(A). In so holding, we join the unbroken
consensus of other circuits to have resolved this question."),
*cert. granted and judgment vacated on other grounds, Anglin v.
United States,* No. 16-9411, 2017 WL 2378833 (U.S. Oct. 2, 2017).
In addition, *attempted* Hobbs Act robbery may well rise to a "crime
of violence." *See, United States v. Rivera,* 847 F.3d 847, 848-49
(7th Cir. 2017) (holding that the Hobbs Act "has as an element the
use, *attempted use,* or threatened use of physical force against
the person of another") (emphasis added) (citing *Anglin,* 846 F.3d
at 965); *Morris v. United States,* 827 F.3d 696, 699 (7th Cir.

2016) (Hamilton, J., concurring) ("If the completed crime has as an element the actual use, attempted use, or threatened use of physical force against the person or property of another, then attempt to commit the crime necessarily includes an attempt to use or to threaten use of physical force against the person or property of another."); *accord, Smith v. United States,* No. 16 C 6445, ECF No. 18, slip op. at 3-5 (N.D. Ill. Apr. 12, 2017) (Leinenweber, J.) ("The Court finds that the principles articulated in *Anglin, Rivera,* and *Morris* are sufficiently consistent with . . . out-of-circuit cases to justify classifying attempted Hobbs Act robbery as a crime of violence under the elements (or force) clause of § 924(c)(3).").

However, the Government points to no authority recognizing the offense of Hobbs Act *conspiracy* as a crime of violence within the meaning of § 924(c)'s elements clause. Indeed, the overwhelming weight of post-*Johnson* authority comes to the opposite conclusion. *See, e.g., Hargrove v. United States,* No. 16 C 7086, 2017 WL 4150718, at *3 (N.D. Ill. Sept. 19, 2017) ("Because neither of the elements of Hobbs Act conspiracy requires the conspirator to use, attempt, or threaten the use of physical force, Hobbs Act conspiracy does not categorically qualify as a crime of violence under § 924(c)'s force clause."); *United States v. Hernandez,* 228 F.Supp.3d 128, 138-39 (D. Me. 2017) ("I conclude

that conspiracy to commit Hobbs act robbery is categorically not a crime of violence under the force clause of § 924(c)(3)(A)."); *Deering v. United States,* No. 15 C 8320, 2016 WL 7178461, at *3 (N.D. Ill. Dec. 8, 2016) (same); *United States v. Baires-Reyes,* 191 F.Supp.3d 1046, 1050-51 (N.D. Cal. June 7, 2016) ("[T]he force clause explicitly encompasses *attempted* use of physical force; by contrast, conspiracy is not specifically covered by Section 924(c)'s force clause . . . .") (emphasis in original); *United States v. Smith,* 215 F.Supp.3d 1026, 1034 (D. Nev. 2016) ("Agreeing to commit a robbery does not necessarily involve the use, attempted use, or threatened use of physical force"); *United States v. Luong,* No. 2:99 CR 433, 2016 WL 1588495, at *2 (E.D. Cal. Apr. 20, 2016) (holding that conspiracy to commit Hobbs Act robbery did not satisfy the force clause because a jury would "not [be] required to find that [defendant] used, attempted to use, or threatened to use physical force in order to find him guilty of conspiracy"); *United States v. Edmundson,* 153 F.Supp.3d 857, 859 (D. Md. 2015) (finding it "undisputed that Hobbs Act Conspiracy can be committed even without the use, attempted use, or threatened use of physical force against the person or property of another").

Therefore, because neither of the elements of Hobbs Act conspiracy requires the conspirator to use, attempt, or threaten

the use of physical force, Hobbs Act conspiracy does not qualify as a crime of violence under the elements clause of § 924(c). Accordingly, Defendants' 60-month sentences on Count III for possessing a firearm in furtherance of a crime of violence cannot constitutionally be anchored in their conviction on Count II for conspiracy to commit Hobbs Act robbery.

### C. Defendants' Motions Are Procedurally Defaulted

One final issue remains to adjudicate before the Court can find Defendants entitled to the relief they seek:  whether their § 2255 Motions are procedurally defaulted.  The Government argues that Defendants Pullia and Scalise, by pleading guilty to conspiracy to commit Hobbs Act robbery, waived any challenge about whether that crime constitutes a "crime of violence" within the meaning of § 924(c)(3).  In addition, because no Defendant filed an appeal, the Government claims that any vagueness arguments presented here on collateral review were waived.  Finally, the Government urges that all three Motions are untimely – Pullia's and Scalise's because the Supreme Court has not actually ruled on § 924(c)(3) (only the residual clause of the ACCA), and Rachel's because it was filed more than one year after *Johnson* came down. The Court takes these arguments in turn.

## 1.  Pullia and Scalise Waived Their
## Arguments by Pleading Guilty

The Government rightly maintains that Pullia and Scalise may not pursue collateral relief here because they pleaded guilty to Counts II and III.   The Supreme Court has consistently rejected the contention that a constitutional flaw revealed by post-plea developments permits a court to set aside the plea.   For example, in *Brady v. United States,* 397 U.S. 742 (1970), the defendant had been charged with capital kidnapping and pleaded guilty to a lesser charge to avoid the risk of the death penalty.   Years after he entered that plea, the Supreme Court decided *United States v. Jackson,* 390 U.S. 570 (1968), which held that the Constitution precluded the death-penalty system established by the statute under which Brady had been charged. The Court held, however, that "a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise."   *Brady,* 397 U.S. at 757.   Instead, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary.   If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack" unless the Court lacked subject-matter jurisdiction.   *United States v. Broce,* 488 U.S. 563, 569 (1989).

The Seventh Circuit has recently reiterated the salience of this feature of *Brady* to § 2255 motions arising out of pleas entered into before *Johnson* and *Cardena*. *See, United States v. Wheeler,* 857 F.3d 742, 744 (7th Cir. 2017) ("Wheeler waived his position by pleading guilty – and to make the waiver doubly clear he acknowledged in writing that the plea surrendered any argument that could have been raised in a pretrial motion. Wheeler now contends that the indictment did not charge a § 924(c)(1) offense because attempted Hobbs Act robbery is not ever a 'crime of violence.' Such an argument not only *could* have been presented by pretrial motion but also *had* to be so presented under FED. R. CRIM. P. 12(b)(3)(B)(v), which provides that 'failure to state an offense' is the sort of contention that 'must' be raised before trial. That *Cardena* post-dates the guilty plea does not matter.") (emphasis in original); *Davila,* 843 F.3d at 731-32 (holding that defendant, who pleaded guilty to conspiring to commit Hobbs Act robbery and to a § 924(c)(1)(A) violation, could not use *Johnson* and *Cardena* to reopen the subject and ask a court to vacate, set aside, or correct his sentence).

Pullia and Scalise seek to do precisely what the *Wheeler* and *Davila* courts proscribed for defendants who have pleaded guilty. They do not contend – probably because the argument would fail – that the Court lacked subject-matter jurisdiction as a result of

the § 924(c) constitutional problem. *See, e.g., Davila,* 843 F.3d at 732 ("The district court had subject-matter jurisdiction under 18 U.S.C. § 3231. This leads Davila to contend that, whenever a constitutional problem crops up in a case that has been resolved by a guilty plea, the district court retroactively loses jurisdiction despite § 3231. That position runs headlong into *Broce,* for the Court there held that a guilty plea prevents collateral relief even on the assumption that the conviction violated the Double Jeopardy Clause of the Fifth Amendment.") (internal citation omitted). Instead, Defendants dredge up only the "statutory issue" of whether Hobbs Act conspiracy falls within the elements clause. *Wheeler,* 857 F.3d at 745 ("Whether attempted Hobbs Act robbery satisfies the elements clause in § 924(c) is a statutory issue. For the reasons given in *Davila,* an unconditional guilty plea waives any contention that an indictment fails to state an offense."). What is more, both Defendants' plea agreements "conferred benefits." *Davila,* 843 F.3d at 732. Specifically, by pleading guilty, both were guaranteed not to receive a total sentence (on all four counts) of greater than 117 months; if they were sentenced above this range, then they would not have been bound by their plea agreements. This benefit is particularly salient where a defendant is faced with a total maximum sentence of life imprisonment, as Pullia and Scalise were.

(Pl. Agr. ¶ 7(f).) Because they do not claim a constitutional right not to be indicted or that their guilty pleas were uncounseled or involuntary, their § 2255 Motions under *Johnson* are procedurally defaulted. As such, they have waived their challenge that Hobbs Act conspiracy is not a crime of violence within the meaning of § 924(c)'s elements clause.

Clearing away some flotsam, the Court notes that the exception to Pullia's and Scalise's § 2255 waiver in their plea agreements for changes in the law that the Supreme Court has made retroactive, does not authorize their challenge here. (Query also whether the terms of a plea agreement can suspend the waiver recognized in *Brady, Broce, Davila,* and *Wheeler* that occurs by operation of law when a defendant pleads guilty.) *Johnson* speaks only to the unconstitutionality of the ACCA's residual clause, 18 U.S.C. § 924(e) – and *Welch* made only that precise change in the law retroactive on collateral review. *See, e.g., Wheeler,* 857 F.3d at 745 ("Neither *Cardena* nor *Johnson* has anything to do with the elements clauses in § 924(c) and other statutes."). The Supreme Court has not yet adopted or opined on the Seventh Circuit's extension of the *Johnson* rationale beyond the residual clause of the ACCA to the similar residual clauses in 18 U.S.C. § 16(b) and 18 U.S.C. § 924(c). (It has heard oral argument in *Sessions v. Dimaya,* No. 15-1498 (U.S.), concerning whether the

residual clause of 18 U.S.C. § 16(b) is unconstitutionally vague in light of *Johnson,* but Defendants opposed the Government's request to stay consideration of their § 2255 Motions pending the decision in *Dimaya*.)  On the current state of the law, therefore, the exception in the plea agreements' § 2255 waiver clause does not sweep in Defendants' *Johnson*-based challenge, as the Supreme Court has only made the right newly recognized in *Johnson* retroactive on collateral review – and not other circuits' extension of *Johnson*.

In sum, by unconditionally pleading guilty, Pullia and Scalise waived their rights to launch collateral attacks on their Count III sentences based on the statutory issue of whether Hobbs Act conspiracy satisfies the elements clause of § 924(c).

## 2. *Rachel's Failure to Raise His Argument on Appeal Is Excused*

In addition, the Government claims that Defendants' Motions are procedurally defaulted because they did not raise their *Johnson*-based arguments on appeal.  (In fact, as noted previously, none of the Defendants took a direct appeal.) Because the § 2255 Motions of Pullia and Scalise are procedurally defaulted by dint of their unconditional guilty pleas, the Court need only analyze the Government's remaining arguments as to Rachel.

Although a defendant is generally barred from raising an argument on collateral review that was not raised on direct appeal, *see, Sanchez-Llamas v. Oregon,* 548 U.S. 331, 350-51 (2006), a court may excuse procedural default if the defendants demonstrates "(1) both good cause for his failure to raise the claims on direct appeal and actual prejudice from the failure to raise those claims, or (2) that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice." *McCleese v. United States,* 75 F.3d 1174, 1177 (7th Cir. 1996) (citations omitted).

### *a. Good Cause*

Invoking *Reed v. Ross,* 468 U.S. 1 (1984), Rachel argues that he had good cause for not making his argument on direct appeal because a claim based on *Johnson* was non-existent until 2015 – approximately three years after he was sentenced. In *Reed*, the Supreme Court held that good cause obtains when "a constitutional claim is so novel that its legal basis is not reasonably available to counsel." *Id.* at 16. When the Supreme Court explicitly overrules one of its precedents and applies that decision retroactively, as it did in *Johnson* and *Welch,* "there will almost certainly have been no reasonable basis upon which an attorney previously could have urged" the newly adopted position. *Id.* at 17. (The Court acknowledges that the Seventh Circuit has called

into question *Reed's* validity after *Teague v. Lane*, 489 U.S. 288 (1989). *See, e.g., Prihoda v. McCaughty,* 910 F.2d 1379, 1386 (7th Cir. 1990). However, *Teague* concerned constitutional rules of procedure and "does not undermine the authority of *Reed* with respect to a substantive rule such as that announced in *Johnson.*" *Deering,* 2016 WL 7178461, at *3 n.5.)

Johnson reiterated the Supreme Court's history of rejecting vagueness challenges to the ACCA's residual clause. *See,* 135 S.Ct. at 2562-63. And the *Cardena* opinion leaves no doubt that *Johnson's* analysis of § 924(e) paved the way for the Seventh Circuit to find the residual clause of § 924(c) unconstitutionally vague. Thus, Rachel's position that he had no incentive to press his *Johnson*-based argument on appeal from his 2012 conviction and sentencing passes good cause muster. *See, e.g., Stanley v. United States,* 827 F.3d 562, 565 (7th Cir. 2016) ("Perhaps a prisoner could argue that he decided not to press an argument about the elements clause at sentencing, or on appeal, when the only consequence would have been to move a conviction from the elements clause to the residual clause. Then it would be possible to see some relation between *Johnson* and a contention that the conviction has been misclassified, for the line of argument could have been pointless before *Johnson* but dispositive afterward.").

Accordingly, Rachel has established good cause for declining to pursue the argument he now advances on direct appeal.

### b. Actual Prejudice

Rachel received an additional five-year sentence for possessing a firearm in furtherance of a crime of violence when the Court determined that Hobbs Act conspiracy constitutes a crime of violence within the meaning of § 924(c). Indeed, Rachel by now has already served his 41-month sentence on Counts I and II, and he has begun serving his 60-month sentence on Count III. This amounts to "obvious" prejudice. *Deering,* 2016 WL 7178461, at *4.

\*    \*    \*

As such, Rachel's appellate procedural default is excused.

### 3. Rachel's Motion Is Untimely

Although a § 2255 motion must generally be filed within one year after a defendant's conviction becomes final, 28 U.S.C. § 2255(f)(1), it may nonetheless be properly filed within one year after a right is newly recognized by the Supreme Court, if that right has been made retroactively applicable to cases on collateral review. 28 U.S.C. § 2255(f)(3). The parties do not dispute that Rachel filed the instant motion several years after his conviction was final, but Rachel claims that his Motion is timely in view of the new right recognized in *Johnson* and made retroactive to cases on collateral review in *Welch*. However, the

Government stresses that Rachel's § 2255 Motion is untimely because he did not file it within one year of the *Johnson* decision.

The untimeliness malaise here is easily diagnosed yet, frustratingly, requires the Court to deny Rachel's Motion for now despite its substantive merits. Notwithstanding Seventh Circuit precedent cabining the right established by *Johnson* to the specific residual clause of the ACCA, Rachel claims that *Johnson* established his right not to be convicted under § 924(c) based on an underlying offense of Hobbs Act conspiracy. But if that is true, then his Motion is untimely by the very terms enunciated in § 2255(f)(3) because he filed it on July 28, 2016 - approximately thirteen months after the June 26, 2015 decision in *Johnson*. If, on the other hand, we heed the Seventh Circuit's pronouncements on the scope of *Johnson,* then either *Vivas-Ceja* or *Cardena* creates the right Rachel seeks to vindicate. Although Rachel filed his Motion within one year of those decisions, on this reading, alas, § 2255(f)(3) by its terms would still not apply because it extends the statute of limitations only when the Supreme Court newly recognizes a right. In sum, no reading of Rachel's Motion supports a timeliness finding under § 2255(f)(3).

However, because Hobbs Act conspiracy falls outside the elements clause, the Court denies Rachel's Motion without

prejudice.  He may bring a timely successive § 2255 motion should the Supreme Court in *Dimaya* or a subsequent case hold that the "crime of violence" provision in § 924(c) is unconstitutionally vague and then make that rule applicable retroactively on collateral review.

<h3 style="text-align:center">IV.  <u>CONCLUSION</u></h3>

For the reasons stated herein, the § 2255 Motions of Defendants Pullia and Scalise are denied with prejudice. Defendant Rachel's § 2255 Motion is denied without prejudice.

**IT IS SO ORDERED.**

_____
    Harry D. Leinenweber, Judge
    United States District Court

Dated:     November 8, 2017